# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-08-00278-CR

**Christopher Lynn LeBlue, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 61833, HONORABLE JOE CARROLL, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted Christopher Lynn LeBlue of engaging in organized criminal activity. *See* Tex. Penal Code Ann. § 71.02 (West Supp. 2009).  Punishment was assessed at 60 years' imprisonment.  LeBlue asserts that the trial court erred by 1) admitting evidence of his prior convictions; 2) allowing the jury to consider uncorroborated accomplice testimony; and 3) failing to instruct the jury that certain witnesses qualified as accomplices.  *See* Tex. Crim. Proc. Code Ann. art. 38.14 (West 2005) (accomplice testimony must be corroborated).  We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The jury heard evidence that on April 21, 2007, LeBlue pulled up to a drive-through bank in Killeen, Texas with two other people—Warren Singer, who sat in the passenger seat, and Lacey Higgins, who sat in the back seat directly behind LeBlue.  LeBlue pulled forward so that Higgins had access to the pneumatic tube connecting the drive-through station to the bank teller.

Higgins placed a forged check and stolen identification card into the tube. The check belonged to a woman named Brenda N. Brown and was made payable to a woman named Michelle Williams. Higgins placed Williams's stolen identification in the tube along with the forged check, apparently hoping to pass for Williams so that the teller would allow her to cash the check.

The teller became suspicious because Higgins did not resemble the photograph on Williams's identification. The teller called her supervisor, who remembered that the same car, driven by the same person, had been involved in a similar attempt to pass a forged instrument the previous day.[1] As a result, bank employees called the police and then stalled. The teller testified that after a while, LeBlue became agitated and told her through the intercom system that he was late for work. When the police arrived, they arrested LeBlue, Singer, and Higgins and searched their car. In addition to drug paraphernalia, they found a backpack in the car that contained stolen checks, deposit slips, and identifications.[2] The arresting officer testified that during the course of the arrest, LeBlue stated he was unemployed.

Based on the April 21 incident, a grand jury indicted LeBlue for engaging in organized crime with a predicate offense of forgery. *See* Tex. Penal Code § 71.02. The indictment alleged two prior felony convictions for enhancement purposes. LeBlue pleaded not guilty, and his jury trial commenced in March 2008.

---

[1] That attempt, like the April 21 attempt, involved a woman sitting in the back seat of LeBlue's car and trying to pass a forged instrument using a stolen identification. Bank employees stalled after becoming suspicious, and LeBlue drove off before the transaction was completed.

[2] The backpack was hanging on the passenger seat.

During the trial, Lacey Higgins testified that LeBlue knowingly participated in her April 21 attempt to pass a forged check. Bank employees and the arresting officer also testified about the events of April 21. The trial court later instructed the jury that because Higgins was LeBlue's accomplice, her testimony required corroboration. *See* Tex. Crim. Proc. Code art. 38.14.

In addition to Higgins, the State called several witnesses who testified that they knew LeBlue personally and that LeBlue had been involved in multiple forgery attempts besides the April 21 incident. During the jury-charge colloquy, the parties and the court discussed whether these other witnesses qualified as accomplices whose testimony required corroboration. The trial court ultimately did not instruct the jury that these witnesses qualified as accomplices, and LeBlue did not object to the omission of such an instruction from the jury charge.

During its case-in-chief, the State introduced evidence that LeBlue had two prior forgery convictions. LeBlue took the stand and admitted those convictions. He also admitted involvement in the extraneous forgery attempts described by witnesses other than Higgins. He claimed, however, that he did not know Higgins was attempting to pass a forged check on April 21.

The jury found LeBlue guilty of engaging in organized crime by forgery for the April 21 incident, and it sentenced him to 60 years' imprisonment. LeBlue subsequently appealed.

## STANDARD OF REVIEW

We review trial court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We will uphold a trial court's determination on the admissibility of evidence if it is reasonably supported by the record and correct under any applicable legal theory. *Id*.

3

When reviewing the sufficiency of the evidence corroborating accomplice testimony, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quotation marks omitted). Sufficient corroborating evidence need not itself prove the defendant guilty beyond a reasonable doubt, but it must link the defendant "in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Id*. (quotation marks omitted). While mere presence at the scene of a crime does not constitute corroboration, "[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Id*. (quotation marks omitted). Each case must ultimately be judged on its own facts. *Id*.

In reviewing whether a trial court erred by omitting an accomplice-witness instruction from a jury charge, we first ask whether the omission was error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If the omission was error and the defendant timely objected, we will reverse unless the error was harmless. *Id*. If the omission was error but the defendant did not timely object, we will reverse only if the error was so egregiously harmful that it deprived the defendant of a fair trial. *Id*. "The difference in harm standards impacts how strong the non-accomplice evidence must be for the error in omitting an accomplice witness instruction to be considered harmless." *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

4

## DISCUSSION

LeBlue raises three issues. We will address them in turn.

### First Issue: Whether the Trial Court Erred by Admitting Evidence of LeBlue's Prior Convictions

LeBlue argues that the trial court should not have admitted evidence of his two prior forgery convictions. The State argued that the prior convictions were admissible because they suggested that LeBlue knew Higgins was attempting to pass a forged check on April 21 and intended and planned to aid her. *See* Tex. R. Evid. 404(b) (evidence of prior convictions admissible to show knowledge, intent, or plan). The trial court admitted LeBlue's prior convictions on those bases and instructed the jury not to consider them for any other reason. LeBlue argues that even though knowledge, intent, and plan are generally legitimate bases for admitting prior convictions, admitting his prior forgery convictions here was prejudicial and insufficiently probative because "the State did not attempt to prove[] the specifics of the prior offenses. Instead, [it] merely prove[d] the conviction[s] [by introducing the Judgments of Conviction]. Thus, the jury was left to guess whether the prior convictions were similar to the instant offense."[3]

LeBlue cites *Birl v. State*, 763 S.W.2d 860, 861 (Tex. App.—Texarkana 1988, no pet.), for the proposition that prior convictions must bear certain similarities to a charged offense,

---

[3] LeBlue continues:

> There is no way to determine whether appellant actually passed the forged item in the prior cases, or whether he [merely] acted as a party. Additionally, it is not known whether the prior cases involved a check, or some other document. The only evidence is that appellant was previously convicted of forgery, which is the same offense he was on trial for. Appellant suggests that under the facts of this case, it would be impossible to limit the prejudicial effect of such evidence.

"such as proximity in time or place or common mode," before they are sufficiently probative to be admissible. LeBlue argues that such similarity was not demonstrated here. He also argues that evidence of his prior convictions was redundant given that the State "already had introduced several other extraneous [forgery] offenses" through witness testimony. Finally, he argues that he was harmed because "[w]ithout evidence of the prior convictions, the evidence against [him] would have been far less compeling [sic]."

LeBlue is correct that prior convictions must be probative to be admissible. *See* Tex. R. Evid. 403. We ultimately give wide deference to trial court determinations on the admissibility of evidence, however, and we will not overturn such determinations as long as they fall "within the zone of reasonable disagreement." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Given the facts of this case, we cannot say the trial court abused its discretion by admitting evidence of LeBlue's prior forgery convictions. The State introduced the convictions only after LeBlue repeatedly suggested, through cross-examinations, that he did not know Higgins was trying to pass a forged check on April 21.[4] By pursuing this tack, LeBlue clearly placed his knowledge and intent at issue, and the State was entitled to present evidence on the matter. *See Bradshaw v. State*, 65 S.W.3d 232, 236 (Tex. App.—Waco 2001, no pet.) ("When a defendant claims his act was free from criminal intent, extraneous offenses are relevant to prove guilty intent."); *Robinson v. State*,

---

[4] LeBlue made this suggestion several ways. First, he elicited testimony from Higgins that she never saw LeBlue in possession of the items she passed to the bank teller; that she personally passed the items to the teller; and that she got the items from Warren Singer. Second, LeBlue elicited testimony from the bank teller that Higgins, not LeBlue, passed the stolen check and identification to her. Third, LeBlue elicited testimony from the arresting officers that Warren Singer admitted to owning the contents of the backpack that was found in LeBlue's car.

844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (State may use extraneous offense to rebut defensive theory). Furthermore, after the State introduced the evidence of LeBlue's prior convictions, LeBlue took the stand and directly testified that he did not know Higgins was attempting to pass a forged check on April 21. Regardless of what evidence preceded it, this testimony put LeBlue's knowledge, intent, and plans directly at issue.[5] Thus, even if the trial court originally erred in admitting evidence of LeBlue's prior convictions, that error was cured when LeBlue took the stand and testified as to his knowledge and intent. *See Daggett v. State*, 187 S.W.3d 444, 454 (Tex. Crim. App. 2005) ("[I]f extraneous offense evidence is improperly introduced during the State's case-in-chief, any error may be cured by the defendant's subsequent testimony which 'opens the door' to rebuttal."). We overrule LeBlue's first issue.

### Second Issue: Whether the Trial Court Erred by Allowing the Jury to Consider Uncorroborated Accomplice Testimony

The trial court properly instructed the jury that Higgins was an accomplice whose testimony required corroboration. *See* Tex. Crim. Proc. Code art. 38.14. LeBlue argues that sufficient corroboration was not provided. Specifically, he argues that (1) all the other witnesses who testified about his criminal activities were themselves accomplices, so their testimony could not corroborate Higgins's, and (2) other than that accomplice testimony, the evidence linking him to the charged offense merely showed that he was present at the scene.

---

[5] It also arguably rendered all of LeBlue's prior felony convictions, including his forgery convictions, admissible for impeachment purposes. *See* Tex. R. Evid. 609(a).

LeBlue is correct that accomplice testimony cannot be corroborated solely by other accomplice testimony. *See Aston v. State*, 656 S.W.2d 453, 454 (Tex. Crim. App. 1983). He is also correct that corroborating evidence is insufficient if it merely places the accused at the scene of a crime. *Malone*, 253 S.W.3d 253, 257. But even if we assume that all the relevant witnesses were indeed accomplices, Higgins's testimony about the April 21 incident was still sufficiently corroborated by other evidence.

It is well established that "sufficient accomplice-witness corroboration may be furnished by the suspicious conduct of a defendant." *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Suspicious conduct may include "[t]he presence of the accused in the company of the accomplice near the time of the offense." *Killough v. State*, 718 S.W.2d 708, 711 (Tex. Crim. App. 1986) (en banc). Here, LeBlue was not merely present at the scene when Higgins broke the law; he drove Higgins to the scene and remained in the car with her, speaking to her intermittently, while she attempted to pass the forged check. In addition, a bank employee testified that LeBlue, driving the same car he was driving on April 21, had attempted to pass a forged instrument at the bank's drive-through on April 20 and had driven off before the transaction was completed. Another bank employee testified that on April 21, after she began stalling, LeBlue became agitated and stated that he was late for work. The officer who arrived on the scene and arrested LeBlue a short time later testified that LeBlue stated he was unemployed. These facts far exceed the requirement of "*some* non-accomplice evidence that *tends* to connect appellant to the commission of the offense alleged in the indictment." *Brown*, 270 S.W.3d at 568. That is to say, these facts clearly constitute evidence of "suspicious conduct" by LeBlue sufficient to corroborate Higgins's testimony. We overrule LeBlue's second issue.

8

***Third Issue: Whether the Trial Court Erred by Failing to Instruct the Jury that Certain Witnesses Were Accomplices Whose Testimony Required Corroboration***

Finally, LeBlue argues that the trial court erred by failing to instruct the jury that certain witnesses besides Higgins qualified as accomplices whose testimony had to be corroborated. At the jury-charge conference, the parties and the court explicitly discussed whether such an instruction was appropriate. LeBlue ultimately neither requested such an instruction nor objected when the jury charge was submitted without one. Thus, the omission of the instruction is reversible error only if it was so egregiously harmful that it deprived LeBlue of a fair trial. *See Almanza*, 686 S.W.2d at 171.

Even if we assume that the individuals in question were LeBlue's accomplices and that omitting a corroboration instruction was therefore error, the omission was not egregiously harmful. As discussed above, the jury heard incriminating evidence from many sources other than the witnesses who may have been accomplices.[6] For example, the jury heard from Higgins (whose testimony was, as discussed above, corroborated by evidence other than the testimony of those witnesses); from bank employees and police officers; and, perhaps most importantly, from LeBlue himself, who admitted previous forgery convictions, admitted involvement in the extraneous offenses discussed by the witnesses, and admitted driving Higgins to the bank on April 21. These facts show that the trial court's failure to issue a corroboration instruction was not egregiously harmful. *See id*. (degree of harm caused by jury-charge omission is assessed in light of overall state of evidence). We overrule LeBlue's third issue.

---

[6] We also note that the witnesses did not testify about LeBlue's involvement in the April 21 incident; rather, they testified about his involvement in extraneous offenses.

**CONCLUSION**

For the reasons stated above, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   June 24, 2010

Do Not Publish